**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DONNA JAMESON**
Greenwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KAYLEE L. HUESTON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No.  32A04-1408-DR-392 |
| | ) | |
| THOMAS C. HUESTON, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Stephenie LeMay-Luken, Judge
Cause No. 32D05-1403-DR-161

**December 10, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Kaylee Hueston appeals from the trial court's order regarding parenting time, child support, and the dependency tax exemption. The trial court deviated from the Indiana Parenting Time Guidelines with respect to the parenting time of Thomas Hueston by giving him more time than the minimum, and it was not required to provide an explanation for the deviation. However, the trial court reached conclusions regarding child support and tax exemption with no evidence before it regarding the respective weekly incomes of the parents or their prior tax returns.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

FACTS

Kaylee and Thomas were married on November 13, 2012. One child, W.H., was born of the marriage on June 15, 2013. The parties separated on September 20, 2013, and on March 13, 2014, Kaylee filed a petition to dissolve the marriage.

On July 15, 2014, the trial court held a hearing regarding the dissolution, parenting time, and child support. Both parties appeared pro se and neither presented witness testimony or documentary evidence. After the parties separated in September 2013, Thomas received four- to six-hour visits with W.H. four times per week. Thomas did not exercise any overnight parenting time between September 2013 and the hearing in March 2014.

Thomas and Kaylee agreed to share joint legal custody of W.H. and that Kaylee would have primary physical custody of the child. The parents disputed the issue of

2

Thomas's parenting time; specifically, they disagreed about whether he should have overnights. Kaylee told the trial court that she was concerned about Thomas having overnight parenting time because his residence was dirty, frequently had dirty dishes piled up in the kitchen, and had bugs and cockroaches inside. Kaylee also told the trial court that Thomas's residence had an unpleasant odor. Thomas denied that there were bugs in his house at the time of the hearing but admitted that there had been in the past.

Kaylee works part-time as a customer service supervisor and Thomas works as a union ironworker. Neither testified nor provided evidence regarding their weekly income and neither presented prior tax returns. No testimony or evidence was provided regarding the cost to Thomas to carry the child on his health insurance plan. No testimony or evidence was provided regarding the factors to be considered when determining which parent may claim the child as a tax exemption.

On July 22, 2014, the trial court issued an order regarding, among other things, parenting time and child support. In pertinent part, it ordered as follows:

> 8. . . . The Court finds that each parent is providing a loving and safe home for the minor child. The Court finds that it is in the best interests of the child to have frequent and significant contact with each parent in order to maintain and nurture the bond he has with each parent. Effective July 25, 2014, Father shall have overnight parenting time every Friday beginning when Father can pick up the child following Father's work day and returning the child Saturday at noon. Effective, August 1, 2014, Father shall have overnight parenting time every other weekend beginning when Father can pick up the child following Father's work day and returning the child Sunday evening at 6:00 p.m. . . .

***

3

10. Child Support: The Court enters no child support order. The Court has attributed a minimum wage to Mother as opposed to her part time salary. . . .

11. The parties shall alternate the tax exemption for the minor child with Mother utilizing the exemption for income year 2014 (filing year 2015) and Father shall utilize the exemption for income year 2015 (filing year 2016).

Appellant's App. p. 4-6. Kaylee now appeals.

## DISCUSSION AND DECISION

Initially, we note that Thomas has failed to file an appellee's brief. When the appellee fails to submit a brief, we need not undertake the appellee's burden of responding to arguments that are advanced for reversal by the appellant. Fifth Third Bank v. PNC Bank, 885 N.E.2d 52, 54 (Ind. Ct. App. 2008). Rather, we may reverse the trial court if the appellant presents a prima facie case of error. Id. "Prima facie" is defined as "at first sight, on first appearance, or on the face of it." Id.

## I. Parenting Time

First, Kaylee appeals the trial court's order regarding Thomas's parenting time. We review a trial court's determination of a parenting time issue for an abuse of discretion. J.M. v. N.M., 844 N.E.2d 590, 599 (Ind. Ct. App. 2006). We will neither reweigh evidence nor assess witness credibility. Id.

The Indiana Parenting Time Guidelines provide as follows:

[t]here is a presumption that the Indiana Parenting Time Guidelines are applicable in all cases. Deviations from these Guidelines by either the parties or the court that result in parenting time less than the minimum time set forth below must be accompanied by a written explanation indicating why the deviation is necessary or appropriate

4

in the case. A court is not required to give a written explanation as to why a parent is awarded more time with the child than the minimum in these guidelines.

Ind. Parenting Time Guidelines, Scope of Application §3. When the trial court issued its order in July 2014, W.H. was approximately thirteen months of age. The Parenting Time Guidelines provide that for children ages thirteen through eighteen months of age, the non-custodial parent should have the following parenting time:

(1) Three (3) non-consecutive "days" per week, with one day on a "non-work" day for ten (10) hours. The other days shall be for three (3) hours each day. The child is to be returned at least one (1) hour before evening bedtime.

(2) All scheduled holidays for eight (8) hours. The child is to be returned at least (1) hour before evening bedtime.

(3) Overnight if the noncustodial parent has exercised regular care responsibilities for the child but not to exceed one (1) 24 hour period per week.

Parenting Time G. 3(B). From ages nineteen months through thirty-six months of age, the non-custodial parent should have the following parenting time:

(1) Alternate weekends on Saturdays for ten (10) hours and on Sundays for ten (10) hours. The child is to be returned at least one hour before bedtime, unless overnight is appropriate.

(2) One (1) "day" preferably in mid-week for three (3) hours, the child to be returned at least one (1) hour before evening bedtime, unless overnight during the week is appropriate.

(3) All scheduled holidays for ten (10) hours. The child is to be returned one hour before bedtime.

(4) If the non-custodial parent who did not initially have regular care responsibilities has exercised the scheduled parenting time under these guidelines for at least nine (9) continuous months, regular parenting time as indicated in section II. D. 1. below may take place.

Parenting Time G. 3(C).

In this case, the trial court deviated from the Parenting Time Guidelines by awarding Thomas more time with W.H. than the minimum. As noted above, therefore, the trial court was not required to provide an explanation under these circumstances. Although Kaylee testified regarding concerns she had about the cleanliness of Thomas's home, Thomas testified that some of the issues had been remedied, that he understood the importance of a clean home when a toddler is spending time there, and that he had an appropriate crib for W.H. to sleep in. It was up to the trial court to assess these witnesses and their testimony, and we cannot say that it abused its discretion in this regard. Therefore, we affirm with respect to the parenting time order.

## II. Child Support Order

The trial court found that Thomas had no obligation to pay child support. Decisions regarding child support generally rest within the sound discretion of the trial court, and we will reverse only if there has been an abuse of that discretion or the trial court's determination is contrary to law. In re Paternity of N.C., 893 N.E.2d 759, 760 (Ind. Ct. App. 2008). We confine our review to the evidence favorable to the judgment and reasonable inferences that may be drawn therefrom. Id.

In this case, the trial court created a Child Support Worksheet. The worksheet listed the weekly income of both Kaylee and Thomas as $290. Appellant's App. p. 7. There were neither pay stubs nor testimonial evidence presented at the hearing regarding their weekly income. The worksheet also listed the weekly cost of the child's health insurance premium to Thomas as $25.60. Id. There was no documentary or testimonial

6

evidence presented at the hearing regarding this fact. Finally, it gave Thomas credit for 146-150 overnights of parenting time. Id. As of August 1, 2014, Thomas is entitled to two overnights with W.H. every other week. That amounts to approximately forty-eight overnights. Even if holidays are taken into consideration—which wouldn't even be necessary until W.H. is older—Thomas's overnights would be far fewer than 146-150. Therefore, we order the trial court to recalculate the number of Thomas's overnights for the purpose of child support. On this record, we are compelled to reverse this child support determination and remand for an evidentiary hearing on all issues relevant to child support.

### III. Tax Exemption

Finally, Kaylee contends that the trial court erroneously authorized Thomas to claim a tax exemption for W.H. every other year. Another panel of this Court very recently explained the guidelines to be followed when considering whether a non-custodial parent is entitled to a tax exemption:

> Federal law grants a dependency exemption to the custodial parent but allows that parent to execute a written waiver of the exemption to the non-custodial parent. Carpenter v. Carpenter, 891 N.E.2d 587, 596 (Ind. Ct. App. 2008). A trial court may also order a custodial parent to sign a waiver of the right to claim the child as a dependent. Id. The Child Support Guidelines recommend that when a trial court is determining whether to order such a waiver, it should consider the following factors:
> (1) the value of the exemption at the marginal tax rate of each parent;
> (2) the income of each parent;
> (3) the age of the child(ren) and how long the exemption will be available;

> (4)  the percentage of the cost of supporting the child(ren) borne by each parent;
>
> (5)  the financial aid benefit for post-secondary education for the child(ren); and
>
> (6)  the financial burden assumed by each parent under the property settlement in the case.
>
> Child Supp. G. 9.  Although the Guidelines are worded in permissive terms—"it is recommended that at a minimum the following factors be considered"—Indiana courts have held that a trial court should consider the factors.  Carpenter, 891 N.E.2d at 596 (quoting Child Supp. G. 9).  The trial court should also review tax exemption questions "on an individual basis" and make a decision "in the context of each case."  Child Supp. G. 9.  The court's equitable discretion should be guided by the goal of making the maximum amount of support available for the child.  Carpenter, 891 N.E.2d at 596.

Bogner v. Bogner, 16 N.E.3d 1031, 1036-37 (Ind. Ct. App. 2014) (emphasis original).

Here, the trial court did not indicate in its order that it considered any of the above-listed factors.  Moreover, as noted above, the parents did not submit any evidence from which the trial court could have considered nearly any of the factors.  Neither party submitted previous tax returns or pay stubs, and there was no evidence regarding the percentage of the cost of supporting the child borne by each parent.  Accordingly, we can only find that it was erroneous to modify Kaylee's tax exemption.  We remand to the trial court to hold an evidentiary hearing on these matters and to reevaluate the issue of the parents' tax exemption based upon the factors listed in the Child Support Guidelines.

Therefore, we affirm in part, reverse in part, and instruct the trial court as follows: (1) we affirm with respect to Thomas's parenting time; (2) with respect to child support, the trial court is to hold an evidentiary hearing regarding the parties' income, which party

8

carries the child on his/her health insurance and the cost of that coverage, and adjust the number of Thomas's overnights to correspond to the parenting time order; and (3) with respect to the party entitled to claim a tax exemption for the child, the trial court is to hold an evidentiary hearing and issue an order taking into consideration the factors delineated by the Child Support Guidelines.

VAIDIK, C.J., and RILEY, J., concur.